# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

**RONALD SCHUELLER,**
        Plaintiff,

**v.**

**GENERAL MOTORS, LLC, and**
**UAW LOCAL 602,**
        Defendants.

**CASE NO.:    20 – cv - 587**

**PLAINTIFF DEMANDS A JURY**

Collin H. Nyeholt (P74132)
LAW OFFICES OF
CASEY D. CONKLIN, PLC
4084 Okemos Road, Ste B
Okemos, MI  48864
(517) 522-2550
collin@caseydconklin.com

_____

## **COMPLAINT and JURY DEMAND**

_____

1

## JURISDICTION AND VENUE

1. Plaintiff RONALD SCHUELLER is a permanent resident of the City of Saint Johns, Michigan. His principal place of employment, at the time of the events described in this Complaint, was at the Lansing Delta Assembly plant, which is a manufacturing facility owned and operated by Defendant GM in the City of Lansing.

2. Defendant GENERAL MOTORS, LLC ("Defendant GM") is a Michigan profit corporation that does business throughout the State of Michigan, the United States, and the world. It maintains a permanent business presence in the City of Lansing, the Delta Assembly plant, wherein the events giving rise to this Complaint occurred.

3. Defendant UAW LOCAL 602 ("Defendant UAW") is, and at the time of the events described in this Complaint was, a labor union with its principal offices and place of operations in Lansing, Michigan.

4. This claim stems from Defendant GM's actions towards Plaintiff during the course of his employment that occurred at the Lansing Delta Assembly plant, which is within the Western District of Michigan. And, this claim stems from decisions that Defendant UAW made regarding Plaintiff's membership in said union which occurred, primarily, in its offices located in Lansing and within the Western District of Michigan.

5. This is a claim for violation of Section 9 of the National Labor Relations Act ("NLRA"), 29 USC § 159(a), Section 301 of the Labor Management Relations Act ("LMRA"), 29 USC § 185, and the statutory and common law of the State of Michigan.

6. The Court may exercise *general in personem* jurisdiction over the Defendants by reason of their permanent business presence within the Western District. In the alternative, the Court may exercise *specific jurisdiction* over the dispute because the transaction or occurrence giving rise

thereto resulted from Defendants' business activities within, and directed towards, the Western District of Michigan. And, in any event, the Court may exercise jurisdiction over the Defendant UAW pursuant to 29 USC § 185(c) by reason that its principle offices are located in Lansing, which is within the Western District of Michigan.

7. The Court may exercise subject matter jurisdiction over the claims stemming from federal law pursuant to 28 USC § 1331 and 28 USC § 1337. It may exercise jurisdiction over the LMRA claim pursuant to 28 USC § 185(a). The Court may exercise pendent jurisdiction over the claims stemming from state law pursuant to 28 USC § 1367.

8. Venue is properly laid in the Western District of Michigan pursuant to 28 USC §§ 1331(b)(1) and (b)(2) and 29 USC § 185(a).

**COMMON ALLEGATIONS**

9. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

10. Plaintiff was employed as an Associate at the Lansing Delta Township Assembly plant operated by Defendant GM. He was hired on February 28, 2016.

11. Plaintiff was, throughout the events described herein, a dues-paying member of Defendant UAW.

12. Plaintiff's employment with GM was governed by the National Agreement between the UAW and General Motors, LLC which became effective on November 23, 2015 (hereinafter "the CBA").

13. Plaintiff was an Employee as defined by Paragraph 3 of the CBA. More particularly, he was a Temporary Employee as contemplated by Paragraph 56 of the CBA.

14. On December 2, 2018 Plaintiff was in a non-work related auto accident. On January 3rd 2019 he was in a second vehicle accident and suffered an injury to his shoulder.

15. On March 29, 2019 Plaintiff began a medical leave to undergo surgery to repair his labrium.

16. Plaintiff returned to work on June 18th. At this time, Plaintiff's doctor filled out appropriate documentation for his restrictions, and indicated that he would have a 15 pound lifting restriction. Plaintiff presented his restrictions to his Group Lead, GM's manager Larry Pline. Pline proceeded to toss the restriction form aside and boldly stated that he "did not care" about the restrictions.

17. He should have cared. Defendant GM was obligated by state and federal law to provide reasonable accommodations to disabled employees, and to engage in an interactive process with a disabled employee who requested accommodations to identify reasonable accommodations. In addition, GM's corporate policy was to comply with disability law, and provide full employment of disabled employees. This policy was incorporated into the CBA at page 409. Therefore, GM's obligation to provide disability accommodations was a term and condition of the CBA.

18. Plaintiff brought Group Lead Pline's unlawful refusal to honor his restrictions to the attention of his UAW representative, Darrel Hill.

19. Rather than take any action to enforce his constituent's rights under state and federal law, and to hold GM to its obligations under the CBA, Hill told Plaintiff to "keep it quiet" and told him "hopefully, Labor won't find out so you can keep your job." Hill failed and, despite Plaintiff's requests, refused to take any further action on Plaintiff's behalf with respect to GM's accommodation of his doctor's restrictions.

20. Group Lead Pline's refusal to honor Plaintiff's lifting restriction proved disastrous to his recovery. His shoulder did not heal correctly. His physicians submitted additional restrictions, none of which were ever honored.

21. On July 11, 2019, despite his restrictions, he was instructed to lift a top hat part that was over 15 pounds (which was outside of his restrictions.) He instantly felt pain in his left shoulder. After the incident, he continued to experience burning and throbbing pain in the shoulder. He filled out an illness incident report and sought treatment for this work-related injury.

22. On or about October 29, 2019 Plaintiff took an additional medical leave to have surgery on his shoulder and convalesce after same. This leave was necessitated by, and related to, the work-related re-injury and exacerbation of his shoulder condition.

23. In January of 2020, Plaintiff's period of convalescence ended. His doctor advised he could return to work. He contacted Defedant GM and advised of his medical status, and requested to return to work and asked about full time employment.

24. Under Paragraph 72 of the CBA, "employees who have been incapacitated at their regular work by injury or compensable occupational disease while employed by the Corporation will be employed in other work on jobs that are operating in the plant which they can do without regard to any seniority provisions of this Agreement[.]" Plaintiff therefore had a right, under the terms of the CBA, to return to work at the Delta Plant following his recover.

25. On January 10, 2020 Plaintiff was verbally informed, after inquiring about his possible full-time position, that he had been terminated from his employment. This was the first notice he ever received that he had been terminated.

26. Paragraph 6a of the CBA provides that "[a]ny claims of violation…of any laws regarding discrimination or harassment on account of disability may be taken up as a grievance." The same paragraph goes on to provide that "[t]he grievance and arbitration procedure shall be the exclusive contractual procedure for remedying such discrimination claims."

27. Paragraph 56 of the CBA provides that "any claim by any other temporary employee made after 30 days of employment, that their layoff or discharge is not for cause may be taken up as a grievance."

28. Plaintiff had a right, under the CBA, to grieve his disability-related termination.

29. Plaintiff again contacted his UAW representative, Darrel Hill, and apprised him of the termination. Hill failed and refused to take any action to grieve, or otherwise challenge, the termination.

30. On February 28, 2020 Plaintiff, now represented by legal counsel (the undersigned), contacted Defendant UAW in writing, advised of its failure to provide representation, and attempted to resolve the ongoing violation. Defendant UAW never responded to counsel's correspondence.

31. Plaintiff's Union's failure, and refusal, to take action on his behalf has left him without effective contractual remedy to GM's wrongful termination. His only relief, at this point, is through formal suit.

## COUNT 1 – Disability Discrimination
*In Violation of Michigan's Persons with Disabilities Civil Rights Act, MCL § 37.1202*
**As Against Defendant GM**

32. Plaintiff repeats and re-alleges the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

33. Defendant GM is an "employer" as that term is defined by MCL § 37.1201(b).

34. Plaintiff's shoulder injury, and restrictions from same, are a "disability" as defined by MCL § 37.1103(d)(i)(A). Further, Defendant GM's managers regarded Plaintiff as suffering from being limited in major life activities and, therefore, he had a "disability" as that term is defined by MCL § 37.1103(d)(iii).

35. Plaintiff is therefore a "person with a disability" as that term is defined in MCL37.1103(h).

36. MCL § 37.1202(1)(b) provides that it is unlawful for an employer in the State of Michigan to "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position."

37. Despite his shoulder injury, Plaintiff was able to perform the essential functions of his job with the restrictions imposed by his doctor.

38. The Defendant failed to engage in reasonable efforts to accommodate Plaintiff's shoulder injury at work.

39. Instead, the Defendant summarily terminated Plaintiff's employment on adverse consideration of his injury and its obligation to accommodate same.

40. Plaintiff did not, and could not, have learned of his termination until January 10, 2020 which is the day it was announced to him.

41. Plaintiff has incurred, and will continue to incur, lost wages and benefits resulting from his unlawful termination.

42. Plaintiff has also experienced humiliation, anger, and outrage resulting from his wrongful termination.

43. Plaintiff has incurred, and continues to incur, attorney's fees and court costs in opposing this ongoing violation of his rights.

## COUNT 2 – RETALIATION
### *In Violation of Michigan's Persons with Disabilities Civil Rights Act MCL § 37.1602(a)*
**As Against Defendant GM**

44. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

45. The PWDCRA prohibits an employer from retaliating or discriminating against a person who has opposed a violation of the Act. MCL § 37.1602(a).

46. Plaintiff engaged in activity protected by the PWDCRA when he advised his employer of his ongoing shoulder condition, and requested reasonable work accommodations and restrictions, and convalescence leave to care for same.

47. Defendant retaliated against Plaintiff for his protected conduct by terminating his employment on January 10, 2020.

48. Plaintiff incorporates by reference, and herein reaffirms, his allegations as to the damages he has suffered from Defendant's violation of his rights as delineated herein.

49. Plaintiff has incurred, and will continue to incur, lost wages and benefits resulting from his unlawful termination.

50. Plaintiff has also experience humiliation, anger, and outrage resulting from his wrongful termination.

51. Plaintiff has incurred, and continues to incur, attorney's fees and court costs in opposing this ongoing violation of his rights.

## **COUNT 3 – FAILURE TO DIVULGE PERSONNEL FILE**
*In Violation of Michigan's Bullard-Plaweck Employee Right to Know Act, MCL § 423.501*
**As Against Defendant GM**

52. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

53. Plaintiff was a person formerly employed by Defendant GM.

54. Plaintiff was therefore an Employee of Defendant GM as that term is defined in MCL § 423.501(2)(a).

55. Defendant GM is a corporation, partnership, labor organization, unincorporated association, or other legal, business, or corporate entity which has four or more employees.

56. Defendants GM is, therefore, an Employer as that term is defined by MCL § 423.501(2)(b).

57. On February 27, 2020 Plaintiff, through his counsel the undersigned, submitted a demand to Defendant GM to permit the inspection of his personnel file.

58. On the same day Plaintiff, through his counsel, submitted an identical demand to Defendant UAW to permit the inspection of his personnel file

59. Defendant GM, through an Associate Legal Counsel, corresponded with Plaintiff. After some prodding, on May 1, 2020 GM provided a partial response to the request for the personnel file. GM's counsel acknowledge, in an email, that "[t]his week we produced the records we have been able to locate to date in light of these unique challenges." She further promised "I have already committed to you that if additional responsive materials are located once more regular access is available, we will supplement our response."

60. As of today, now *three months* after the original request was made, and a full *six weeks* after GM promised to "supplement our response" GM has never followed up and provided a complete production of Plaintiff's personnel file.

61. MCL § 425.503 permits an employee to inspect the contents of the personnel file with the employer.

62. MCL § 425.504 permits an employee to receive copies of the contents of his personnel file from the employer.

63. Defendant GM, through the conduct outlined above, has failed to permit inspection and copying of Plaintiff's personnel file pursuant to MCL §§ 425.503 and 425.504.

64. MCL § 425.511 provides a provide cause of action to an employee whose employer fails to permit inspection or copying of his personnel records. Plaintiff may recover his actual damages for the violation, and his attorney's fees for bringing and maintaining the action, pursuant to same.

## COUNT 4 – WORKER'S COMPENSATION RETALIATION
*In Violation of MCL 418.301(13) et seq*
**As Against Defendant GM**

65. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

66. In Michigan, it is unlawful for an employer to discharge or otherwise discriminate against an employee who files a worker's compensation claim or asserting a right under the Workers Disability Compensation Act ("WDCA"). MCL 418.3101(13). The anti-retaliation protections of the statute prohibit an employer from retaliating against an employee for making a formal claim under the WDCA, or for seeking medical care after a work-related injury. *Cuddington v. United Health Services*, 298 Mich.App. 264 (2012). A lawsuit filed under MCL 418.301(13) may be heard in federal court. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 196 (6th Cir. 2004).

67. Plaintiff engaged in activity protected by the WDCA when he

    a. Sought treatment for the work-related exacerbation of his shoulder injury that resulted from Defendant GM's failure to provide accommodations for his disability, and

    b. Took a medical leave of absence to convalesce after the second should surgery which was necessitated by the work injury and exacerbation of same.

68. The Defendant retaliated against Plaintiff for the protected conduct above by terminating his employment on January 10, 2020.

69. Plaintiff has suffered the following damages as a result of the Defendants' violation of his rights:

    a. Lost back pay and benefits,

    b. Lost front pay and benefits,

    c. Lost bonuses,

    d. Emotional pain and distress, and

    e. Attorney's fees in opposing same.

## COUNT 5 – FAILURE TO REPRESENT
*In Violation of 29 USC § 159(a)*
**As Against Defendant UAW**

70. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

71. Section 9(a) of the National Labor Management Relations Act directs unions to "serve the interests of all members without hostility or discrimination toward any[;] exercise its discretion with complete good faith and honesty[;] and avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); 29 USC § 159(a). There is a private right of action for a violation of Section

9(a) which may proceed independently of a claim under Section 301 of the LMRA. *Pratt v. Local 1435,* 939 F.2d 385, 390 (6th Cir. 1991).

72. Plaintiff was a member of the Defendant UAW.

73. After Plaintiff suffered his shoulder injury, and his supervisor refused to honor his restrictions, he reached out to his union for help. His union told him that he should attempt to conceal his injury or else he would suffer termination. This was a misrepresentation; the union's counsel that he could be *terminated* for requesting disability restrictions was, plainly, contrary to GM's policy, state and federal law, and the CBA. The union's misrepresentation to Plaintiff as to his rights at this time was clearly lacking in honesty and good faith. At a minimum, the union's handling of Plaintiff's request to intercede and cause GM to honor his restrictions was arbitrary.

74. Plaintiff was terminated on January 10, 2020 after he took leave to care for his work-related injury. Plaintiff approached his union and was told there was "nothing we can do" to remedy the termination. This was yet another misrepresentation; the CBA provided that Plaintiff *was* able to grieve his termination. This additional misrepresentation evinces a lack of honesty and good faith. The union's refusal to take further action on Plaintiff's part based on its grossly inaccurate representations as to Plaintiff's rights under the CBA was, at a minimum, arbitrary.

75. On February 28, 2020 Plaintiff, through his counsel the undersigned, contacted the Defendant UAW and advised of its violation of the duty to represent. Defendant UAW failed to correct its misconduct at this time. The Defendant UAW, in fact, failed to respond to Plaintiff's counsel's correspondence at all. The UAW's failure to corrects its conduct, or even respond to Plaintiff's demand, demonstrates that its violation of the duty to represent was willful, intentional, and malicious.

76. Plaintiff has suffered, and continues to suffer, lost wages, benefits, and bonuses resulting from Defendant UAW's failure to properly advise him of his rights under the CBA and its arbitrary decision not to intercede on his behalf.

77. Plaintiff has suffered humiliation, anger, and outrage resulting from his wrongful termination and from his union's failure to represent him in this circumstance.

78. Despite its failure to represent him adequately in his time of need, Plaintiff has paid dues to the Defendant Union for several years. The union should not be permitted to retain the benefits of Plaintiff's payments to it, in light of its utter failure to represent him. Plaintiff, therefore, will seek an order requiring the Union to disgorge his dues payments from the first day of employment.

79. Plaintiff has incurred, and will continue to incur, attorney's fees in opposing the union's wrongful conduct towards him.

## COUNT 6 – HYBRID 301 CLAIM
*Pursuant to 29 USC § 185*
**As Against Defendants UAW and GM**

80. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

81. The Labor Management Relations Act affords a union member a remedy in federal court for a violation of his rights under a collective bargaining agreement. 29 USC § 185. This is commonly referred to as a "Hybrid 301" claim. A plaintiff-employee may succeed on such a claim when they can show "that the employer breached the collective bargaining agreement *and* that the union breached its duty of fair representation." *Pratt v. UAW, Local 1435*, 939 F.2d 385, 388 (6th Cir. 1991).

82. Defendant GM violated the CBA by, as described in more detail previously,

    a. Failing and refusing to honor Plaintiff's various requests to accommodate his disability, and

    b. Terminating Plaintiff's employment on January 10, 2020..

83. Defendant UAW violated the duty of fair representation, as more fully articulated herein, by

    a. Repeatedly misrepresenting Plaintiff's rights and GM's obligations under the CBA,

    b. Refusing to intercede with GM to enforce his right to disability accommodations,

    c. Refusing to accept, advance, or otherwise counsel Plaintiff to file a grievance following his wrongful termination,

    d. Failing and refusing to correct its ongoing misconduct even after Plaintiff's counsel advised it of same in February of 2020.

84. Plaintiff has suffered, and continues to suffer, lost wages, benefits, and bonuses resulting from Defendant GM's wrongful termination and Defendant UAW's failure to properly advise him of his rights under the CBA and its arbitrary decision not to intercede on his behalf.

85. Plaintiff has suffered humiliation, anger, and outrage resulting from his wrongful termination and from his union's failure to represent him in this circumstance.

86. Despite its failure to represent him adequately in his time of need, Plaintiff has paid dues to the Defendant Union for several years. The union should not be permitted to retain the benefits of Plaintiff's payments to it, in light of its utter failure to represent him.

87. Plaintiff has incurred, and will continue to incur, attorney's fees in opposing GM and the union's wrongful conduct towards him.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief from this Honorable Court:

1. An order of REINSTATEMENT to his position of employment,

2. ECONOMIC DAMAGES equal to Plaintiff's lost back and front pay, benefits, and bonuses as well as other out-of-pocket costs lost as a result of Defendants' wrongful conduct,

3. Disgorgement of the UNION DUES that Plaintiff has paid Defendant UAW throughout the course of his membership,

4. COMPENSATORY DAMAGES sufficient to compensate Plaintiff for his emotional pain and distress resulting from Defendants' wrongful violation of his rights as delineated herein,

5. EXEMPLARY damages, in whatever amount the Court should deem just and proper, pursuant to Michigan law,

6. ATTORNEY'S FEES and LITIGATION COSTS, in an amount determined reasonable by the Court, so wrongfully incurred in bringing this action, pursuant to the various statutes identified herein,

7. Pre and post judgment interest at the appropriate statutory rate, and

8. Such other relief as this Court may deem just and appropriate in law or in equity.

**PLAINTIFF DEMANDS A JURY**

Respectfully Submitted,

Dated: 6/30/2020        __/s/ Collin H. Nyeholt_____
Collin H. Nyeholt
Attorney for the Plaintiff